FILED 25 SEP '23 14:00 USDC-ORE

Jorge Ramon Sierra
FCI Sheridan
P.O. Box 5000
Sheridan, OR 97378
Register No: 40732509

United States District Court
District of Oregon

Jorge R Sierra

     Plaintiff

V.

SIS Officer Moreno;
Captain J. Cerone; and
Warden Jacquez

     Defendants

Case No: 3:23-cv-01396-HZ

Civil Action Complaint
BIVENS

1. This is a civil Rights complaint filed pursuant to Bivens v. le unknown un-named agents; Bivens established that the victims of a Constitutional violation by agents of the Federal

Bureau of Prisons have a right to recover relief and damages in Federal court.

2. This court has Juristiction under 28 U.S.C. Section 1331 and 1343

3. This Complaint alleges violations of Plaintiffs 8th Amendment Right to be free from Cruel and unusual Punishment. It further alleges negligence and delibrate indifference.

<u>Plaintiff:</u>

4. The Plaintiff Jorge R Sierra was incarcerated at Federal Correctional Institution Sheridan, in the Special Housing Unit at all times revelant to this Lawsuite

BIVENS

<u>Defendants</u>

5. Defendant Moreno is a security officer employed on a security threat group at FCI Sheridan.

6. Defendant Cerone is the Captain at FCI Sheridan and is defendants Moreno's immediate supervisor.

7. Defendant Jacquez is the warden at FCI Sheridan and is in charge of the safety of all inmates as well as the supervision and discipline of all correctional staff at Sheridan.

8. All the Defendants have acted and continuted to act under the color of Federal Law at all time to this Complaint, and each are sued in thier official and individual capacity.

## Facts

9. On June 15th 2023, Plaintiff arrived on transport from Madison County Jail, Idaho.

10. Immiediatly upon arrival Plaintiff informed intake Staff that He was a dropout Sureno and that he had discrepancies with his paperwork, and for that reason he did not feel Safe around general population inmates.

11. An answer to this information, Plaintiff was made to not only remain in holding cell with general population inmates, but in the end, assigned to and sent to the most densely populated Soreno unit at FCI Sheridan.

12. Against Plaintiffs better judgement he agreed to enter the housing unit in question, as Soon as he got to the door he was accosted and questioned by a member of his ex-gang.

13. The questions were, was the Plaintiff a Sureno gang member and was his paperwork clean. (clean meaning had he said any thing to authorities during his arrest)

14. Plaintiff told his questioner the truth most about his gang status and that he said to much during arrest. The response the active gang member told him, "The least that will happen to you is a beat down, but you know what happens to dropouts. (Infering severely hurt or stabbed)

15. At which point Plaintiff approached the Unit officer and informed him of the conversation between plaintiff and gang member. Immiediatly the unit officer approached the gang member made things worse by informing the gang member about Plaintiffs circumstances.

16. At which point Plaintiff became in more fear for his saftey than never before.

17. Plaintiff was then escorted to the Special Housing Unit (SHU).

18. On June 16th 2023, the SHU Lieutenant tried to place Plaintiff back in general Population.

19. Plaintiff explained to the SHU Lieutenant the situation to him as well. Plaintiff was then Placed under Investigation.

20. On July 5 2023 Defendant Moreno and one of his officers interviewed Plaintiff because they wanted to document his gang tattoos, but the real reason was to coerce the Plaintiff into a false sense of Security.

21. When it was clear to Defendant Moreno that the Plaintiff was really done with his gang life and wanted to program, Defendant Moreno switched tactics. Telling the Plaintiff, He was willing to order him out to general population and not

to worry, he probably will not get stabbed. That the Sureno's will just send 2 or 3 guys to beat on plaintiff until they got tired.

22. After Plaintiff informed Defendant Moreno that he did not feel comfortable or safe doing that, he told Plaintiff to make up a lie stating he is a sex offender, the last thing Defendant Moreno told Plaintiff before ending the meeting was that Plaintiff is going back to general population wheather he likes it or not.

23. When Plaintiff got back to his cell and for the rest of that day, Plaintiff was scared and sunken in to a deep dark depression. The fear and trauma the defendant subjected the plaintiff to cause the Plaintiff to have no less than 3 panic attacks.

24. On July 18 2023, Plaintiff wrote a long detailed letter to psychologist Dr. Kline explaining to her the trauma the defendant was causing him and how the situation in of its self was causing plaintiff to break down mentally. Plaintiffs symptoms included hearing voices, Anxiety, Depression, Stress, and Sadness.

25. On July 31 2023 in the early morning, Plaintiff was un-ceremonly escorted, to the Special tasing Unit Law library. It should be noted that, entire time plaintiff was shackled behind his back with handcuffs that were to tight. Plaintiff believes this was an intimidation tactic used by S.I.S. to bend inmates to their will.

26. One of Defendant Moreno's officers entered the Law Library with Plaintiff. He spoke with Plaintiff briefly and when it became apparent that he could not convince the Plaintiff to go back

to general population and put his life at risk he became visibly irritated and ordered plaintiff back to his cell.

27. Immediatly afterwords, Plaintiff was again roughly shackled behind his back and escorted out for an interview, only this time to the SHU recreational yard. It was the same officer as earlier only this time with Defendant Moreno, at which time Plaintiff reitterated for the second time that day that he was a dropout and would not be safe in general population.

28. Defendant Moreno started asking mundane questions such as how many times he has spoken to the plaintiff. when Plaintiff attempted to and answer the question Defendant moreno became enraged and became disrespectful and cursed at plaintiff Stating:

"Shut the Fuck up, Just Shut the Fuck up, You are a stupid fuckin idiot." And most telling of all he informed Plaintiff in the same en-raged tone: "I dont give a fuck about you" and "or what happens to you."

29. On August 8th, 2023, Plaintiff was asked by a SHU officer, "Are you going to follow direct orders and go out to general population." The Plaintiff being under the assumption this was S.I.S. Moreno's doing, did not refuse in did in fact tell him "yes, I will follow your order and go to general population."

30. Hours later, Plaintiff was escorted to the SHU Law Library, and in walked in S.I.S Moreno, angry again, in a angry and threatening tone Defendant Stated to Plaintiff, "what did I tell you to do," Plaintiff informed Defendant he was Just doing what he was ordered

to do, and that he has been working with psychology to get to Unit 4 where it would be safe for him. At which point Defendant Moreno Stated, "I'm not going to put you in Unit 4, I'm going to put you in a Active Unit where you will be Jump and or killed."

31. Defendant Moreno then re-itterated, and stated, "If you do not refuse to go out to general population like I told you, I will put you under investigation and keep you locked in the SHU for 6 months or more." At which point Defendant Moreno asked "Are you going to refuse like I told you to do or am I gonna put you under investigation." In fear of retaliation Plaintiff agreed to refuse population next time.

32. In closing Plaintiffs and Defendants Moreno's Meeting, Defendant Moreno stated again, "If staff orders you out to population refuse and after you get three write ups with this infraction, you will still be sent to an Active Yard."

33. Defendant warden Jacquez, by and through Defendant Cpt. J. Serone did and continued to violate Plaintiff's rights to not only be free from retaliation but also cruel and unusual punishment under the 8th amendment.

34. Direct Participation States Defendants are liable who directly participate in Constitutional violations, However, the laws of indirect participation State, Higher level staff knew or reasonably should of known a series of events could cause a Constitutional violation.

35. Furthermore, since these two named Defendants above set the policies, right the regulations and give the orders the Lower Defendants are to follow, that makes them equal to Direct participation.

36. Defendant J. Cerone through defendant warden Jacquez not only tolerated but approved a dangerous classification policy that either placed dropout and Special needs inmates on a active yard and or forced them under threats to stay in the Special Housing Unit 3 to 6 months under false pretense investigations.

37. Defendant Jacquez being the Director and warden OF Sheridan F.C.I. is accused OF Decisions that created unconstitutional decisions, and conditions

38. Defendants Moreno, Cerone, and Jacquez created policy and had a custom of affirming unconstitutional disciplinary write ups that were based upon direct orders they had given.

39. On wednesday 13th September 2023 Plaintiffs Cell mate Andrew Barnett number 71117-065 informed SHU Staff and psychology of comments Plaintiff made to him about hopelessness and Suicide, Stemming from Defendants indifferent, Cruel and unusual treatment.

40. Later on that same day pschyolagy and SHU Staff Spoke with Plaintiff regarding the above. Plaintiff informed them that he felt completly hopeless and like there was no point to living due to the unconstitutional treatment by defendants.

41. Still, later, that same day and with all of that being said, psychology, by and through the defendants not only did not take any preventive mesures to stop the potential suicide but put him back in the same cell were he had access to hazardous materials.

42. At approximitly 10:pm plaintiff swalloded a razor blade in a attempt to end his life.

43. On September 14th 2023, Plaintiff was still alive, so around 9pm, Plaintiff swallowed another razor blade.

44. Approximitly an hour later Plaintiff noticed an unbareable stabbing pain in his lower abdomin and began to vomit. Said vomit included coupous amounts of blood.

45. At approximitly 10:pm Plaintiffs cell mate alerted SHU staff that plaintiff had swallowed two razor blades within 24 hours and is throwing up blood.

46. Plaintiff was immiediatly taken by ambulance to Salem Hospital in Oregon, were he endured much pain and suffering, both physical and mental, including but not limited to the botched attempts of emergency services to start a pick line, a malfunctioning metal restraint that had to be cut from the plaintiffs hand with bolt cutters, a procedure in were the plaintiff was put under local aniethesta, and a endoscope was mainly forced down his throat to his stomach. All of this took place while strangers mocked him and he was roughly restrained to a metal bed.

47. On September 19th 2023 During a meeting with Defendant Cerone. Plaintiff attempted again to reach out to ask for help, and not only did Defendant not help plaintiff but he totally disregarded and minimized plaintiffs concerns and needs telling Plaintiff in other words he did not care about him all he cared about was finding out where the razors came from. By leaving an obviously mentally and ill inmate in a cell with access to hazardous material Defendents again showed delibrate indifference to his psychiatric needs.

<u>Claims for Relief</u>

48. The actions of Defendants Moreno and Cerone in using bully tactics, retaliation and threats were done malaciously and sadisticly and constituted cruel and unusual punishment in violation of the 8th amendment of the United States Constitution.

49. The Failure of Defendant Jacquez to take action to curb Defendant Moreno's known pattern of threats and verbal abuse constituted delibrate indifference to plaintiffs safety and contributed to an proxomity caused the above described violation of the 8th amendment.

50. The failure of all three Defendants, to provide a safe enviroment and or to stop plaintiffs active suicide attempt constitutes not only delibrate indifference but also the tort of negligence under Oregon State Law.

## Relief Requested

Respectfully the Plaintiff Request that the court grant the following relief:

1. Issue a declaration stating that Defendants actions in first trying to place a gang dropout on a Active yard by deception and then ponitively punishing the Plaintiff when their scheme failed that Defendants violated and continued to violate the Plaintiffs 8th and 14th amendment rights. Defendants failures take action to curb the trauma and mental abuse of Plaintiff and that also violated the 8th and 14th amendment; and the Defendants failure to take preventive action to stop plaintiffs suicide attempt violated plaintiffs right to be free from cruel and unusual punishment.

2. Issue an emergency injunction issuing Defendants to release the plaintiff from Punitive Segragtion and place him in either a Low or Special Needs Facility, close to his family.

3. Order Defendants to expunge the disciplinary Convictions that happened in this complaint from the plaintiffs record.

4. Award Compensatory Damages in the following amount:
$10,000 Jointly and severely against Defendants Moreno and Cerone for the physical and emotional injuries Sustained as a result of their actions

5. $50,000 Jointly and Severely against Defendants Moreno and Jacquez for the emotional injury resulting from their failure to provide adequate mental health care to the Plaintiff

6. Award punitive Damages in the following amounts:

$ 5,000 against defendant Jacquez

$ 10,000 against defendant Cerone

$ 50,000 against defendant Moreno

7. And, if it pleases the court grant Such other relief that the Plaintiff deserves

Pursuant to 28 U.S.C. 1746 I declare and Swear under penalty and perjury that every word of this lawsuit is correct.

Jorge Sierra                              September 21 2023

Jorge Ramon Sierra                    Date

FCI Sherridan

P.O. Box 5000

Sheridan Oregon 97378

Register No: 40737-509