FILED 28 DEC '23 10:23 USDC-ORP

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON

JORGE R. SIERRA

            Plaintiff

v.

SIS OFFICER MORENO et al;

            Defendants

Case No. 3:24-CV-01396-HZ

THIRD AMENDED
COMPLAINT

Plaintiff, Sierra, incarcerated at FCI Sheridan, Oregon, brings THIRD AMENDED COMPLAINT. Pursuant to 42 U.S.C. 1983.

Defendant Lt. Moreno a correctional officer at FCI Sheridan, Oregon under color of statue the entire time of this complaint.
P.O. Box 8000, Sheridan Oregon 97378
Address

Defendant Griffin a correctional officer at FCI Sheridan, Oregon under color of statue the entire time of this complaint.
P.O. Box 8000, Sheridan Oregon 97378
Address

## LAW

1. Under Eighth Amendment, prison officials may not use excessive force against a prisoner and are requiered to provide humane conditions of confinement ensuring that inmates recieve

THIRD AMENDED COMPLAINT    1 of 28

adequate food, clothing, shelter and medical care and must take reasonable measures to guarantee safety of Inmates. U.S.C.A. Const. Amend. 8.

2 In cases involving failure to prevent harm, Eighth Amendment is violated only when inmate shows he is incarcerated under conditions posing substantial risk of serious harm and that officials displayed "deliberate indifference" to inmate health or safety. U.S.C.A. Const. Amend. 8.

3 Requirement that prison officials show "deliberate indifference" to prisoners, in order to be liable for failure to prevent harm, is satisfied by something less than acts or omissions for very purpose of causing harm or with knowledge that harm will result. U.S.C.A. Const. Amend 8.

4 Prisoner claiming that prison officials violated Eighth Amendment duty to protect the prisoner against harm need not show that official acted or failed to act believing that harm actually would befall an inmate; it is sufficient that official acted or failed to act despite knowledge of substantial risk of serious harm. U.S.C.A. Const.

THIRD AMENDED COMPLAINT   2 OF    28

8.

Prisoner who believes that he is being Subjected to Substantial risk of Serious injury, due to officials' failure to protect him from harm, is not required to wait for "tragic event" Such as an actual assault before obtaining relief, but may bring an Action Seeking an injunction based on claim that officials are knowingly and unreasonably disregarding objectively intolerable risk of harm and will continue to do So. U.S.C.A. Const. Amend. 8.

Deliberate indifference entails something more than negligence, but is Satisfied by Something less than acts or omissions for the very purpose of causing harm · or with knowledge that harm will result.

Trop v. Dulles, 356 U.S. 86, 101, 78 S. Ct. 590, 598 2 L.Ed 2d 630 (1958) Being violently assaulted in Prison is Simply not "part Of the Penalty that Criminal offenders pay for their offenses against. Society!"

THIRD AMENDED COMPLAINT   3 of   28

Wilson, 501 U.S., at 297, 111 S. Ct. at 23 23. To violate the Cruel and Unusual Punishments Clause, a Prison official must have a Sufficiently Culpable State of mind."

Estelle v. Gamble establishes that deliberate indifference entails Something More than Mere negligence, the cases are also clear that it is satisfied by Something less than acts or omissions for the very purpose of causing harm or with knowledge that the harm will result. The point underlies the ruling that "application of deliberate indifference Standard is inappropriate" in one class of prison cases: when officials stand accused of using excessive physical force.

The civil law generally calls a person reckless who acts or fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.

A Prisoner has the right to be Secured by the Eighth and Fourteenth Amendments, to be reasonably protected from Constant threat of violence and Sexual assualt by fellow inmates, and he need

not wait until he is actually assaulted to obtain relief. U.S.C.A. Const. Amend. 8, 14.

12 While a prisoner has no constitutional right to rehabilitation, the Eighth Amendment protects an inmate from an environment where degeneration is probable and self-improvement unlikely because of conditions existing which inflict needless suffering, whether physical or mental. U.S.C.A Const. Amend. 8.

13 "The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed. 2d 251 (1986) "We have said that "[a]mong 'unnecessary and wanton' inflictions of pain are those that are totally without penological justification.'"

14 For use of force, In determining whether conduct of prison guard has impermissibly infringed protected rights of prisoner, Court of Appeals must consider need for guards action, relationship between that necessity and amount of force actually used, degree of injury to prisoner's

THIRD AMENDED COMPLAINT 5 of 28

retained rights, and whether conduct was good-faith effort to maintain discipline or engaged in maliciously and Sadistically for Sole purpose for Causing harm.

12 Young v. Quinlan, 960 F.2d 351, 360-361 (CA3 1992) ("[A] Prison official is deliberately indifferent when he knows or should have known of a Sufficiently Serious danger to an inmate.")

13 Hudson v. Palmer, supra, 468 U.S., at 526, 104 S.Ct. at 3200, having Stripped them of virtually every means of Self protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course.

14 Whitley, supra, 475 U.S., at 320, 106 S.Ct., at 1084-1085) "The claimant must show that officials applied force maliciously and Sadistically for the very purpose of Causing harm."

15 The Eighth Amendment does not outlaw cruel and unusual "conditions" it outlaws "Cruel and unusual punishment."

THIRD AMENDED COMPLAINT    6 of 28

16. Gregg v. Georgia, 428 U.S. 153, 183, 96 S.Ct. 2909, 2929-2930, 49 L.Ed.2d 859 (1976) (Joint opinion) (the Eighth Amendment prohibits all punishment, physical and mental, which is totally without penological justification"). "Such brutality is the equivalent of torture, and is offensive to any modern standard of human dignity."

17. "It's society's responsibility to protect the life and health of its prisoners. [W]hen a sheriff or a marshall takes a man from the courthouse in a prison van and transports him to confinement for two or three or ten years, this is our act. We have tolled the bell for him. our collective responsibility, we are free to do something about him; he is not'. Address by THE CHIEF JUSTICE, 25 Record of the assn. of the Bar of the city of New York.

18. Wilson V. Seiter (1991) held that any pain and suffering endured by a prisoner that is not formally a part of his sentence-no matter how severe or unnecessary-will not be held violative of cruel and unusual Punishment Clause unless the prisoner establishes that some official intended the harm.

THIRD AMENDED COMPLAINT    7 of 28

See also Webster's New International Dictionary of the English Language 1736 (1923) (defining punishment as "[a]ny pain, suffering, or loss inflicted on or suffered by a person because of a crime or evil-doing.")

Duckworth v. Franzen (1985) (" 'the infliction of punishment is a deliberate act intended to chastise or deter.' ")

(White, J., concurring in judgement). The Eighth Amendment guarantees each prisoner that reasonable measures will be taken to ensure his safety. Where a prisoner can prove that no such reasonable steps were taken and, as a result, he experienced severe pain or suffering without any penological justification, the Eighth Amendment is violated regardless of whether there is an easily identifiable wrongdoer with poor intentions.

Smith, 103 S.Ct. at 1637 ("... based on the policies of 1983, we are content to adopt the policy judgement of the common law - that reckless or callous disregard for the plaintiffs rights... should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages.

THIRD AMENDED COMPLAINT _ 8 of 28

## Claims

23 Plaintiff arrived at FCI Sheridan on June 15 2023 and informed staff he is a Drop out gang member. Plaintiff was Taken to the FCI SHU for protective Custody.

24 On July 5 2023 Defendant Moreno Spoke with Plaintiff where Plaintiff informed Defendant that he could not be with any active gang members due to Plaintiff being a Dropout. Defendant Moreno told Plaintiff that "the worst that will happen is the gang members will Jump" him. Plaintiff told Defendant Moreno he "can't go to general population." Defendant Moreno told Plaintiff that he will still be placed in general population.

25 Plaintiff was taken back to his cell where he was in fear for the outcome for Plaintiffs life. So Plaintiff wrote to Psychology, Case Managers, Counselors and other Staff members of his fear of going out to general population.

THIRD AMENDED COMPLAINT    9 of 28

Plaintiff was Seen by Psychology Dr. Schnieder. Plaintiff had a panic attack while informing her about his fear to go out to general population.

On July 31st 2023 Defendant Moreno brought Plaintiff to the SHU rec. yard. Defendant Moreno asked Plaintiff questions and without any provocation Defendant Moreno told Plaintiff to "Shut the Fuck up, Shut the fuck up." Defendant Moreno continued to tell Plaintiff "You stupid fuckin idiot this is all your fault for having a big Mouth." Also "I dont give a fuck about you or what happens to you."

Plaintiff Strongly believes, that the reason Defendant was so mad was because Plaintiff Informed multiple Staff members about his fear and about Defendant Moreno's Actions.

Defendant Moreno told Plaintiff he will remain in the SHU for over six months and that he will recieve three infractions for refusing

THIRD AMENDED COMPLAINT    10 of 28

to work or program. Defendant Moreno also told Plaintiff that "I will get you sent to another Active yard where they can deal with you."

30    Plaintiff was taken back to his cell. Plaintiff wrote his family, Psychology, DOJ, DSCC, The warden, case Managers, any one that would listen but he did not get any replies from FCI staff members.

31    Plaintiff suffered from Depression, Anxiety and panic attacks from the threat from Defendant Moreno and from not being able to get help from anyone.

32    On September 13 2023 Plaintiff was escorted to the SHU rec yard to speak to Psychology Mr. Bindle, about his well-being. Plaintiff had a panic attack and told Mr. Bindle "Whats the point of living if Moreno is just sending me somewhere where I will be killed. Im a dropout. I cant be in any active yards. I got my tattoos removed for a reason. Im done with all that dumb shit."

THIRD AMENDED COMPLAINT    11 OF 28

33. Mr. Bindle spoke with Plaintiff howver plaintiff had his mind made up. Plaintiff told mr. Bindle that at the time he does not have any thoughts of Suicide.

34 Plaintiff was taken back to his cell where he undercame fear of being killed and Anxiety because nobody would help.

35 Plaintiff tried to do different activity's with his cell mate but he was still Depressed.

36 Plaintiff took apart two razor blades while his cell mate was asleep and put them aside. Around the second time the officers walked in the Am Plaintiff swallowed a razor blade.

37 Plaintiff was still alive, on September 14 2023, Plaintiff failed to commit Suicide, So he was still wanting to end his life and the thoughts, so he

THIRD AMENDED COMPLAINT 12 of 28

Swallowed another razor because he thought this time it would end his life. At about 10:00 pm Plaintiff started feeling pain in his Stomach. Plaintiff Started to throw up. Plaintiffs cell mate was worried for plaintiff because he seen blood come out.

38  Plaintiff told Cell mate what he tried to do and Plaintiff's cell mate called Staff for help, and informed staff about Plaintiff.

39  Plaintiff was taken out of cell and Questioned and Plaintiff told Staff he does not want to live, just to go to another facility thats active and get killed, by gang members, for being a dropout.

40  Staff called an Ambulance which picked up Plaintiff and took him to Salem Hospital in Oregon, for Medical attention. September 14 2023

41  Plaintiff was placed in leg Shackles and handcuffed to a gurnee and pushed to an Intake room. Many people Stared at Plaintiff while

THIRD AMENDED COMPLAINT     13 OF 28

the officers pushed him down the hospital halls. Plaintiff was in fear of actually loosing his life and humiliated and embarressed with the Shackles and authority presence.

42  Plaintiff recieved x-rays and two razors were located in the plaintiffs stomach.

43  Plaintiff was pushed to his intake room to wait for results from Medical Staff. Plaintiff had so much mental anguish, for the wait time, only bad thoughts.

44  On September 15 around 5 am 2023 a nurse came to the intake room to tell Plaintiff and Correctional officers that he would be getting admitted to the hospital and that he was going to be getting Surgery to remove the razor blades.

45  Plaintiff was in more fear now because, now he would have to go through Surgery and not know his outcome, or whether he would need a colostomy bag.

THIRD AMENDED COMPLAINT   14 of 28

46. On September 15 2023 around 6 Am Defendant Griffin showed up to Plaintiff's room and was briefed about the event.

47. On September 15 2023 around 7Am Medical Staff came to inform Plaintiff that he will be getting taken to a Prep room to prep him for Surgery.

48. Once in the prep Plaintiff asked to use the restroom but was given a cup to Pee in. Defendant Griffin checked Plaintiff's handcuff and placed the handcuff key in the cuff and tightened the Cuff. Plaintiff informed Defendant Griffen that It was "to tight and that Shit hurts."

49. Defendant Griffin said "well it Seems fine to me, next time try to hold it in". Plaintiff told Defendant "I had to pee, please loosen the cuff, its tight." Defendant Griffin ignored Plaintiff.

50. Plaintiff was pushed into the Surgery room and Medical Staff injected Plaintiff with

THIRD AMENDED COMPLAINT    15 OF 28

Some sleeping medication and they did their surgery.

51 Plaintiff woke up in the recovery room coughing with so much pain in his throat and pain in his left hand.

52 Medical staff explained to Plaintiff and staff that they couldnt recover the razor. Plaintiff was now in fear to ask anyone for help due to Defendant Griffin not loosening the handcuff.

53 Plaintiff was pushed to his room that he would stay in until further Notice. Once there Plaintiff asked defendant to please loosen the handcuff. However when he tried this time he told Plaintiff "Next time dont swallow razors".

54 Plaintiff told Defendant, very quietly, "Sorry, please man, the cuff hurts." Defendant Griffin attempted to remove the handcuff but only tightened it more and said "the key does not work."

THIRD AMENDED COMPLAINT 16 OF 28

55 Plaintiff asked to use the restroom and Defendant uncuffed the handcuff part that was cuffed to the bed, but did not uncuff Plaintiffs handcuff on his wrist. Plaintiff used the restroom.

56 Plaintiff finished and went back to the hospital bed where Defendant cuffed the cuff back onto the bed. And Plaintiff asked to "please loosen the cuff." Defendant Griffin told plaintiff that the cuff might have got broken so he would have to wait, for FCT Sheridan Stuff to come by.

57 Most of the tim Plaintiff was in pain from the handcuff. Plaintiff tried to think of Something other than the pain. He thought of this whole event and how he could have left his 2 and 3 year old children without a father.

58 The Salem Hospital Doctor entered the Plaintiffs room and let Plaintiff know that he may possibly be getting surgery on his

THIRD AMENDED COMPLAINT    17 OF 28

Stomach, were they would cut him open and remove the razor blades.

59. Staff informed FCI Staff about the handcuff "malfunctioning" around noon. Defendant Griffin attempted to quickly remove the handcuff but failed to do so.

60. FCI Staff arrived at the Salem Hospital and tried to remove the handcuff from plaintiff.

61. FCI Staff finally removed the handcuff around 3pm with Bolt Cutters. Once handcuff was removed there was a cut from the handcuff on plaintiffs hand. Medical staff noticed the cut on Plaintiffs hand and asked if he wanted pain pills, or medicine. Plaintiff felt like he could turn to no one about the handcuff issue because he felt he would be punished.

62. Once Plaintiff recovered from his suicide attempt on September 16 2023 Plaintif was discharged

THIRD AMENDED COMPLAINT    18 OF 28

at around 4:30 from the Salem Hospital. Plaintiff was transported back to FCI Sheridan by FCI Correctional officers.

63 Once Plaintiff arrived to FCI Sheridan, Plaintiff was placed in Suicide watch. And was stripped of all of his clothes and given a smok to wear and a single blanket and 1 matress. This was the most degrading feeling plaintiff felt after the traumatic Went that occurred. Also the bed was placed under a vent that blew a continuous amount of cold air.

64 The Plaintiff was sent back to the SHU on September 18 2023 at 3:30pm after informing Psychology that he appologizes for his mistakes but also once again told him his fear of being sent to an active yard.

65 The Plaintiff informed Medicall that he has pain on his wrist and that he would like to be seen about it, However it took Plaintiff about 4 times to write Medical

and about a month to be seen about his pain in his wrist.

66. Once the FCI Medical Doctor Ayala seen plaintiff, he told plaintiff that it seems that the hand cuff caused nerve damage, and thats what is causing the pain. Also that there can be surgery to fix the damage.

67. Doctor Ayala prescribed Plaintiff Ibuprofen 800 for pain and infammation which is now for plaintiffs chronic care. and also Doctor Ayala Prescribed plaintiff Duloxetine HCI Delayed Rel 60 MG to take daily for pain and nerve damage.

68. Plaintiff has recieved three infractions for failure to program or work in order to be kept safe from imminent danger in general population.

69. The Disciplinary hearing officer disallowed good time of 12 days, imposed loss of commissary

THIRD AMENDED COMPLAINT   20 of 28

and visiting privileges as punishment for not following orders to go out to general population, where the well being and Plaintiffs safety for his life would be in Danger. This Disciplinary hearing occurred on October 04 2023 where Plaintiff also informed the DHO officer about Defendant Moreno's Actions.

70. The Plaintiffs Mail has also been held for weeks before being handed to him without any notice or reasons.

71. The Plaintiff has appealed the infractions to the Regional Director of BOP.

72. The Plaintiff has wrote Department of Justice about Defendant Moreno's actions.

73. The Plaintiff is still in the FCI Sheridan SHU, with three infractions on his file. He has completed programs in the SHU showing that he

THIRD AMENDED COMPLAINT 21 OF 28

is programing. Plaintiff Completed Education courses, 7-20-23, 8-09-23, 8-24-23, 9-06-23, 10-02-23, 10-19;23, and 11-14-23. Plaintiff has also recieved Certificate of Achievement. Completion of the Turning Point SHU Curriculum for "Preparing to change" 7-21-23, Coping" 8-07-23, "Attitudes" 8-27-23 and "DAP" 9-03-23 from Staff psychologist Schneider.

74. However, Plaintiff recieved three infractions on 8-16-23, 8-29-23 and 9-25-23 for Refusing to work or program, because of my safety concerns.

75 Plaintiff has not been a disciplinary problem to the FCI Sheridan Staff or Institute.

76. Plaintiff has also missed out in the opportunity to have a daily relationship with his partner and kids via the phone.

77 Also he missed the oppurtunity to recieve the BOP Christmas package that all BOP inmates recieve, on December 20 2023.

THIRD AMENDED COMPLAINT   22 of 28

## Damages

78  Defendant Moreno continued to force Plaintiff out to general population where Plaintiff informed Defendant Moreno that he would be in danger. By Defendants Moreno's Actions he went on Showing Deliberate indifference towards the Plaintiff.

79  Defendant Moreno Caused Emotional Damages by bringing Depression, fear, Anxiety to Plaintiff.

80  Defendant Moreno's Actions and threats led Plaintiff to think there is no hope or reason to live, which Ultimitley led Plaintiff to commit Suicide.

81  Defendant Moreno's Actions and threats brought Panic Attacks to Plaintiff. Also it is difficult for Plaintiff to put trust in Correctional Staff.

82  AS a result to the emotional Damage Plaintiff was Sent to the hospital for his Suicide Attempt which led to

THIRD AMENDED COMPLAINT 23 of 28

multiple needle poking for an I.V., surgery, and for the Plaintiff to be humiliated.

83  Defendant Moreno caused Plaintiff to not feel safe or secure in the hands of the Bureau of Prison Staff.

84  Defendant Griffin used excessive force by tightening Plaintiff's handcuff. The Plaintiff was not disruptive or any danger to any staff, person, or self for Defendant Griffin to discipline Plaintiff in such a way. This act was engaged in a malicious maner to cause pain to the Plaintiff, for over three hours. Defendant Griffin punished Plaintiff for him asking for a looser cuff. Plaintiff is mentally tramatized over this whole event, from begining until present time.

85  Defendant Moreno acted reckless in a criminal sense with his actual knowledge to the potential danger to plaintiff, in trying to place him in harms way and telling plaintiff he will get sent to another Active gang yard.

THIRD AMENDED COMPLAINT  24 OF 28

86 Due to plaintiff being held in the SHU, he could only speak to his Family once a month. The Plaintiff cannot order other Commissary items. Also the staff did not let Plaintiff recieve a Christmas package that all B.O.P. inmates recieve. The Plaintiff has missed out to conversations with his family on holidays Because Defendant Morenos actions.

87 Defendant Moreno acted maliciously and Sadistically to cause harm to Plaintiff, to make him Suffer.

88 Defendant Griffin acted maliciously and Sadistically to cause harm to plaintiff by leaving tight handcuff on him longer than three hours, causing nerve damage and continued pain, that Plaintiff Suffers from.

89 By Plaintiff being in the SHU he has missed the Oppurtunity to work for credit towards early release for his First Step Act credits. This would be a damage he would like to recieve.

THIRD AMENDED COMPIAINT 25 OF 28

# Relief

90  Plaintiff is asking for an injunction relief to be sent to a dropout yard and to Bar Plaintiff from being sent to any Active yards in the future.

91  Plaintiff is asking for the three infractions to be expunged from his record including Plaintiffs loss of good time of 12 days.

92  Plaintiff is asking for any or all credits Plaintiff Could have recieved of good time towards his First Step Act.

93  Plaintiff is asking for the Christmas Package that all BOP inmates recieved in 2023 that he did not recieve for Being in the FCI SHU, Due to the Events in this complaint.

94  Plaintiff is asking for Defendants to be held liable for actions and to make Sure this does not occur to any other inmate.

THIRD AMENDED COMPLAINT   26 of 28

95 Defendant Moreno is being sued in their official capacity and or in his individual capacity.

96 Defendant Moreno is sued for $2500 for the personal humiliation and mental anguish and suffering caused by the constitutional violation.

97 Defendant Moreno is being sued for $5,000 in punitive damages for the conduct that rose the level of reckless indifference to Plaintiffs constitutional rights.

98 Defendant Griffin is being sued in his official capacity and or in his individual capacity.

99 Defendant Griffin is sued for $2500 for the personal humiliation and mental anguish and suffering caused by the constitutional violation, for tight hand cuff left on Plaintiff for over three hours, which left Plaintiff with nerve damage and ongoing pain that he now

THIRD AMENDED COMPLAINT    27 of 28

takes medication for. This will trouble Plaintiff in the future for work and life activities.

100   Defendant Griffin is being Sued for #5,000 in punitive damages for the conduct that rose the level of reckless indifference to Plaintiffs Constitutional Rights.

101   Plaintiff is asking For a computation of his Sentence.

102   And any or all other relief the Court May deem appropriate.

   Pursuant to 28 USC 1746 I declare under penalty of perjury that the foregoing is true and Correct.

_Jorge Sierra_ #40737509                    12/26/2023
Jorge R. Sierra                             Date
Federal Correctional Institution Sheridan
P.O. Box 5000
Sheridan, Oregon 97378

          THIRD AMENDED COMPLAINT      28 of 28