IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JORGE R. SIERRA,

                Plaintiff,

     v.

SIS OFFICER MORENO, et al.,

                Defendants.

Case No. 3:23-cv-01396-HZ

ORDER

HERNANDEZ, District Judge.

This prisoner civil rights case comes before the Court on Plaintiff's Motion for TRO and Preliminary Injunction (#22) and Motion for Evidentiary Hearing (#26). For the reasons that follow, Plaintiff's Motions are denied.

## I.    Motion for TRO and Preliminary Injunction (#22)

Plaintiff alleges that he has been held in solitary confinement since June 15, 2023 because general population is unsafe for him and prison officials at FCI-Sheridan refuse to transfer him to a "gang drop-out yard."[1] He asserts that Defendants have failed to protect him

---

[1] Although Plaintiff claims that he has been suffering the mental effects of solitary confinement since June 15, 2023, Defendants provide evidence that his special housing assignment did not begin September 18, 2023. Declaration of Captain Joseph Cerone, ¶ 6. The Court need not

despite knowing there is a serious threat to him in an "active yard" setting due to his status as a former gang member. He also states that the solitary conditions of his confinement in the Special Housing Unit ("SHU") are adversely affecting his mental health.[2] He therefore asks the Court to order his immediate transfer to another facility where he can safely enter its general population.

The standards for a temporary restraining order ("TRO") and a preliminary injunction are essentially identical. *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008). A plaintiff may also qualify for a preliminary injunction by showing that there are serious questions going to the merits of his claim and that the balance of hardships tips sharply in his favor, so long as the other *Winter* factors are also met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127. 1134-35 (9th Cir. 2011). A request for a mandatory injunction seeking relief well beyond the status quo is disfavored and shall not be granted unless the facts and law clearly favor the moving party. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319-20 (9th Cir. 1994).

Defendants assert that Plaintiff failed to properly exhaust his available administrative remedies, thus his likelihood of success on the merits of claims not properly before the Court is

---

resolve this discrepancy at this time because it does not affect its resolution of the Motions at issue in this Order.

[2] Plaintiff also references injuries stemming from overtightened handcuffs correctional officers placed on him for three hours during a trip to a hospital last year. It does not appear that any preliminary injunctive relief is available for that past episode, and that occurrence also does not appear to lie at the foundation of Plaintiff's Motions currently before this Court.

low. *See Declaration of Danielle Rogowski* (#31); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Plaintiff claims that the BOP's records are not accurate, and that the grievance process at FCI-Sheridan is inadequate because correctional officers refuse to provide forms for Adults in Custody to file. Response and Rebuttal (#40), pp. 1-2. Irrespective of Plaintiff's potential failure to exhaust his administrative remedies prior to filing this suit, his likelihood of success on the merits of his claims is low for more substantive reasons.

When Plaintiff filed this lawsuit on September 25, 2023, his principal concern was that Defendants were attempting to force him into a situation in which other prisoners posed a danger to his safety. Specifically, Plaintiff described himself as a "gang drop-out" and feared retribution from his former gang members if correctional officials placed him in general population. He made numerous allegations that Defendants were acting in disregard of his physical safety and knowingly trying to endanger him.

When Plaintiff complained about threats to his safety, staff placed him in the Special Housing Unit ("SHU") for his protection while the Special Investigative Services Department ("SISD") completed a Threat Assessment Investigation. Declaration of Captain Joseph Cerone, ¶ 6. Officials initially determined there was insufficient information to verify a threat and ordered Plaintiff back to general population on three separate occasions. *Id* at ¶ 7. Fearful of a general population placement, Plaintiff refused each of these three requests so as to remain in protective housing in the SHU. *Id.*

3 - ORDER

Based upon Plaintiff's refusals to move to general population out of for fear of his safety, officials submitted a transfer request to the Destination and Sentencing Computation Center ("DSCC"). *Id* at ¶8. Although the DSCC denied the request, on November 13, 2023, the BOP reopened its threat investigation. The SISD was able to verify an active threat and resubmitted a request for Plaintiff's transfer. *Id* at ¶ 9. That transfer request apparently contained errors and therefore needed to be resubmitted on March 14, 2024, but it is currently pending. *Id* at ¶10. In this respect, Defendants are affirmatively attempting to facilitate a prison move for Plaintiff where he can be placed in a general population setting, all the while keeping him safe in the SHU. Accordingly, Plaintiff's likelihood of success on an Eighth Amendment failure to protect claim is low.

Plaintiff also seeks an immediate transfer because he finds the conditions of his confinement in the SHU intolerable, asserts that his mental health is suffering as a result, and claims Defendants are being deliberately indifferent to his serious mental health needs. He characterizes his placement in the SHU as solitary confinement, and refers to a suicide attempt he made last year. Although Plaintiff characterizes the SHU as "solitary confinement" that is adversely affecting his mental health, the Court reiterates that Plaintiff has been housed with a cellmate for the entire duration of his stay in the SHU. *Id* at ¶11. In addition, "medical and psychological providers conduct regular rounds to ensure that any inmates in the [Special Housing Unit] have the opportunity to voice concerns and access treatment." *Id* at ¶ 12. Plaintiff was the recipient of a formal psychological evaluation as recently as March 14, 2024. *Id* at ¶ 19. In the original Complaint he filed with the Court, he claimed to have reached out to the psychologist on staff while housed in the SHU. Complaint (#2), ¶24. He also stated that when his

4 - ORDER

cellmate advised SHU staff and a psychologist that Plaintiff was making comments of hopelessness, the staff responded on the same day (September 13, 2023). *Id* at ¶¶39-40. It does not appear that Defendants have been deliberately indifferent to Plaintiff's serious mental health needs, thus his likelihood of success on such an Eighth Amendment claim appears to be low.

Where Plaintiff claims to have attempted suicide in the past, he is strongly encouraged to continue to utilize the mental health services available to him within the Special Housing Unit. However, for purposes of a mandatory injunction, his desire for a more expeditious transfer so he can enjoy the benefits of general population at a different institution does not constitute the likelihood of irreparable injury where he is: (1) housed in special housing and, thus, protected from the threat of physical violence he believes faces him in a general population setting at FCI-Sheridan; (2) has access to mental health services which he has repeatedly utilized in the past; and (3) is not subject to solitary confinement.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (per curiam) (italics in original, internal quotations and citation omitted). Because Plaintiff is unable to demonstrate a likelihood either of success on the merits or irreparable injury, preliminary injunctive relief is not appropriate. The Motion for TRO and Preliminary Injunction is therefore denied.

## II.    <u>Motion for Evidentiary Hearing (#26)</u>

Plaintiff asks the Court to conduct an evidentiary hearing to help support his request for preliminary injunctive relief. Because the Court is able to resolve that issue on the existing

5 - ORDER

record, an evidentiary hearing is not required. *See Lopez v. Brewer,* 680 F.3d 1068, 1078 (9th Cir. 2012).

<u>**CONCLUSION**</u>

Plaintiff's Motion for TRO and Preliminary Injunction (#22) and Motion for Evidentiary Hearing (#26) are denied.

IT IS SO ORDERED.

April 14, 2024
_____
DATE

_____
Marco A. Hernandez
United States District Judge

6 - ORDER